Good afternoon. You're right, I'm so programmed into saying good morning, but obviously we had some scheduling problems here. It's a matter of, is it Balyan? Yes, Your Honor. Balyan v. Baldwin. Are you ready? Yes, Your Honor. May it please the Court, Stephen Haddad on behalf of Marina Balyan, and I respectfully request three minutes for rebuttal time. Can you just start off by telling us what in the world happened here? What caused this delay? Judge, the procedural history in this case is simple. A complaint was filed in August of 2011, and the case was dismissed. It was attorney neglect, Judge, simply put. I've never seen any... I've been on this court for 20 years, on another court before this for 10 years. I have never, ever seen this kind of, you call it neglect. That's kind of like calling Mount Everest a molehill. I mean, it boggles the mind. It's inexcusable. Well, if it's inexcusable, if it's neglect, then we're under 60B1, right? 60B1 is about excusable neglect, right? Those are one of the facets that I would argue. Yes, Your Honor. Well, the Supreme Court says those two provisions that you argue, 60B1 and 60B6, are mutually exclusive, right? That's what Pioneer tells us? Yes. Okay. So if it's a neglect case, we're not talking about 60B6, are we? Well, we can as it relates to the plaintiff in this case as the hardship that will befall her if the matter is not reinstated. That goes to 60B6. Under 60B1, the excusable neglect, this court has held that attorney neglect can be a basis to overturn a dismissal under a lower court than a trial court. Let me understand how both things could be applicable here. When you didn't specify in the district court which part of 60B1 you wanted relief under. Is that correct? 60B, rather. Which part of 60B1 you wanted relief under, be it subsection 1 or subsection 6, you really didn't specify? It would be 60B, I guess what the request for relief would have been. Was 60B. Whether it would be number 1, excusable neglect, or section 6 under the catch-all. But nevertheless, this court also said that you can find an abusive discretion when the lower court didn't flesh out the Pioneer factors, a Pioneer versus Brunswick case. Specifically, if you didn't flesh out those requirements, Chief Judge McKee, that there could be a finding of abusive discretion below. Under 60B1 or 60B6? Well, I guess it would be either one, particularly when the Pioneer factors. What are the Pioneer factors, those four factors, what do they go to? Well, it would go to the fact that the excusable neglect in this case was there and should have been granted. So as soon as you say 60B1, or excusable neglect, we're in 60B1, right? Right. Okay. Now, it's true that you're free to argue in the alternative, but for me, I'd like to know what your main argument is. I take it your main argument is the excusable neglect one. Is that right? That's correct, Your Honor. I thought you said, maybe I misunderstood you, I thought you said inexcusable neglect. Well, the characterization of the conduct of the attorney handling the matter is inexcusable. That was what the Chief Judge McKee had mentioned earlier on, and I responded back. So if it's inexcusable, how can you say it's excusable? Well, the conduct is characterized as inexcusable as an attorney and officer of the court, and for the rest of that argument, and as this Court has ruled in Boner and in Carter, we don't want the inexcusable conduct of an attorney and officer of the court to befall the moving, who is otherwise blameless in this case. Let me go back with some of the facts. On January 25th of 2012, Judge Shessler suggested this case might be right for dismissal for failure to serve. There was a hearing scheduled for six days later on the 31st. No one even showed up for that hearing, did they? No. Any idea what slipped through the cracks here? I'm just trying to... The attorney from my research was a practicer in state court. In state court, Your Honor, when a matter is dismissed for lack of prosecution for failure to serve process, you ought to immediately serve process. Once you complete... But that wasn't even done here, was it? It wasn't even... Five months and four days later. No, it was attempted a week later. If you look at the... A week after the listening for the forum hearing? For the dismissal on the 31st, there was an attempt on February 6th. So it would seem to me from the... How long after the forum hearing was that? I don't know if it was February 6th. I think it was February 8th was the first one I called. Well, however you figure it, it's difficult to get a handle on what you're arguing because you say in your briefing, for example, on the very first page of your brief, that the appellant moved to reinstate the action based on inability to serve the appellee despite due diligence. That's a quote, despite due diligence. But you've just acknowledged, and of course the record compels the acknowledgement, that there was no attempt to serve the appellee until after the dismissal. How could there be a basis for saying we should have this reinstated because we tried with due diligence to serve when there was no attempt to serve? There was no attempt to serve between the time the complaint was filed and the time that Judge Chesler dismissed the case, yes. That was the abandonment that the attorney had on his client. But to answer your question... Yeah, so how is there an argument? I guess I'm just trying to understand, like, going back, even what the argument was there. Here, you indicate in your brief to us that the motion under 60B was, quote, based on inability to serve the appellee despite due diligence. How can there be due diligence in an attempt to serve, and hence a 60B argument, when no attempt to serve was made until after the dismissal? How is that possibly characterized as due diligence? The due diligence that was expressed in the brief from the conduct of the attorney was because after it was dismissed, and while I was answering Judge Ambrose's question, this inexperienced counsel in state court would serve process, then seek to reinstate the case. During the time he's trying to reinstate the case, he attempts to do his due diligence by checking the DMV, white pages, and other sections. But are you telling me that there's a process in practice in New Jersey? They've got an incredibly fine judicial system. Are you saying that in Jersey, kind of the way things happen is that you file a complaint, wait for it to be dismissed, and then you attempt to serve? Is that the way it works? That's not the way the procedural rules and the civil procedural rules work. I hope not. You're supposed to serve it within 10 days, in fact. And before the statute runs, I would hope. File before the statute runs and serve. If you file on the last day, you can't serve it before the statute runs. But it's 10 days in state court. Nevertheless, it's a local rule in state court that if your case is dismissed for lack of prosecution, you're supposed to go cure the defect first, then come back to the court and ask the court if they'll reinstate it now that you've cured the defect. In Jersey, too, if you receive notice in a Jersey court that there's a hearing listed on a certain date pending pending contemplation of dismissal of the complaint, it's kind of the common practice you don't sharpen that hearing, just let the complaint be dismissed. Yes, Chief Judge McKee. There is no vehicle for you to go to court. It's by motion only. But we don't normally – he didn't normally file a motion. He would cure the defect, then request under best practices, request that it be reinstated. If you do that within 60 days, all you need is a good cause. He would have had that here. He would have had a good cause. The order for dismissal wasn't appealed, right? The order of dismissal on January 31st was a part of my appeal along with the July 26th order of Judge Heslop. And your – of course, that order – Wait a minute. It took you how many days? Five months, right? Five and a half months, wasn't it? Five months, four days. Five months. To file a motion for reconsideration. Yes. Yeah. So I guess the question I've got is, is the order of dismissal properly before us? If you didn't file – Didn't appeal that order. If you didn't appeal that order and you filed the 60B, it's a jurisdictional question. It may be that the denial of the 60B motion, in fact, brings with it the order of dismissal. But that's the question I'm asking. It's a jurisdictional matter. Are you entitled to that? Yes, Judge. Williams v. Guzzardi is the case that allows that the initial order, the January 31st order and the July 26th – well, actually, the initial appeal was for the July 31st order. But because there was a 60B motion made – You mean January 31st? I'm sorry. Yes. Okay. To that order, it also encompasses the 60B order that came. You said that he would have been able to show good cause. Help me understand the good cause. Well, what this inexperienced counsel had did was try to cure the defect. The good cause that he would have made in state court would have been that he didn't get service of process because either she – in this particular fact, in this particular fact pattern, that she was either evading service or he couldn't get service of process on her. In your brief, you alleged she was evading service. There's no citation to the record at all. I looked at the affidavit of return of service. What in the record substantiates your allegation in the brief that she was trying to evade service? Judge, there was a – Page 10 of your brief. If you make statements like that in the brief, they should be tied to the record. If you can't substantiate it from the record, you really shouldn't put it in the brief. Judge, there was an affidavit from the service of process that had tried to serve her many times. We did a DMV search, came back that she was still living there. When you went to the apartment – What hours did he go there? It's listed on the – I didn't see it on there. What I saw is he wasn't able to effect service. Period. So what – yeah, so where do you get that she was evading service? You say, quote, the record demonstrates that Baldwin was evading service, unquote. Yeah. As the Chief Judge has noted, there's no citation, so can you point us to something where the record demonstrates that? It may have been a scrivener's error, but I specifically remember – How do you know it was a scrivener's error? She was attempting to evade service. Do you have a macro in your computer? You hit Alt, Return, and it spits out on your brief, she was attempting to evade service. How does that become a scrivener's error? Because there was a document signed by Mr. Kritzner that I saw, or one of the service processors for general subpoena, that had said on the side evading service, and that wasn't attached to the brief. That was the intent to show the court that she was evading service. I'm trying to find out what that could possibly have been based on. I asked you what time service was attempted in May. You said you weren't sure. Do you know what days they attempted the service? Yes, Judge. What days? Not the dates, but the day of the week those dates fall on. I can look it up for you, huh? The point is if someone came to my house with a service between, say, 10 and 4, on 15 consecutive days, not 15 consecutive days, but 15 different efforts between Monday and Friday, they're not going to find me home because I'm at work, I'm in my chambers. So if someone goes and knocks on my door at 10 o'clock or 11 o'clock or 1 o'clock in the afternoon, on a Monday, a Tuesday, a Wednesday, a Thursday, or a Friday, I say, oh, jeez, McKee attempted to evade service. He's not home during the work hours of a work week. I don't know if there's anything more than that on the face of this record. Why wouldn't we assume that the RIT server that I guess works normal business hours attempted to perpetuate service during normal business hours when one could presume you wouldn't find somebody home if they're employed? She could have been on vacation. She could have been visiting relatives. It's an incredible statement to make. It's offensive, frankly, to put a factual allegation like that in a brief without any sight to the record, and then when we check, there's no foundation for that statement in the record. I mean, it looks like what happened is there were several failed attempts at 208 Mary Street in Harrisburg, Park 64. Is that Appendix 25? Total of six attempts. And then the docket entry 10 shows that she finally was successfully served on September 22, 2012, at 1046 Foxcroft Drive in Camp Hill, outside Harrisburg. So, I mean, she just wasn't there. She was in another place. From the research that we did, that was her current address. We had no other address to serve her at. You might want to sit down while I tell you this, because this is going to come as earth-shaking news that's going to be picked on the seismographs over in Ukraine who are going to pick this up. Not everyone is in their home 24 hours a day, seven days a week. In fact, you go to someone's home and they're not there, does not suggest that they're hiding behind the blinds, not answering the door. It may be, surprise, surprise, surprise, they are not home. Maybe they had to get some food so they could have something in the refrigerator. Maybe they were visiting somebody. Maybe they were working. Yes, Judge. How much was the complaint that it asked for in terms of damages? $100,000. $100,000. You say there is, quote, no detailed explanation for any perceived delay in bringing the motion, meaning the motion to reinstate the cane five days, five months, four days late. First off, not to nitpick here, but you say perceived delay. Wouldn't you agree that that is a significant delay? You've got five months past the time that the thing is dismissed, before your Rule 60 motion is filed. I mean, there's nothing curious about the district judge's perception there, is there? Well, Judge, in between the time that the matter was dismissed, there was this attempt to serve in February and April, and the delay, the rule used to be six months. It was extended for one year. It was less than half and less than the old rule. Isn't that turning Rule 60B on its head when you argue that, hey, it's less than half the time period, so there has to be some extraordinary finding to justify what the district judge did? That's exactly the opposite of what 60B says. 60B and all the case launderer talks about you have to come forward and show something extraordinary, not that your opponent or that the court has to show there's some extraordinary reason not to grant you relief. I'm puzzled by that argument. Well, the argument is that the excusable neglect argument goes back to the attorney's ineffective assistance to his client. That's the overarching argument here, Your Honor. Well, I'm reading your argument, and your argument is the perceived delay is less than half of the period of time granted to seek relief, that because of that, there must be some extraordinary finding for the court to conclude that the delay is unreasonable. Where are you getting that? The burden to show something extraordinary is on you, right? Right. Okay. So aren't you trying to get us to invert the rule by saying, oh, no, the court had to say there was something extraordinary here? Well, maybe I got carried away with my brief, Your Honor, but the point is that in between the dismissal and the application, there was the effort to cure the defect, which is the reason that the case was dismissed to begin with. But the overarching view here is that the plaintiff, Marina Balian, is innocent, had nothing to do with the dismissal, wasn't involved with the case, was undergoing surgery in April with regard to this accident, and counsel didn't do what he was supposed to do, and we don't want to befall the errors of counsel on an innocent plaintiff under Carter and Boner. Assume for the moment that we vacate the order and we send it back. Doesn't the plaintiff here still have to show, persuade the court, that the September 2012 service on Baldwin was timely under the federal rules? She would. But if you reinstate the case, then at that point in time, I would imagine that the trial judge would reset the matter and allow the matter to be brought in to cure the jurisdictional defect and start over again. Why so? Well, only because it was dismissed as of January 31st. I mean, it took 13 months to get service here. But I don't think the service was any good because the matter was dismissed. So it's a nullity. If it gets reinstated, it's going to be reinstated as of January 31st. It will start all over? Right. It will essentially start all over, respectfully. Can I get you to respond to one thing, if my colleagues will indulge me? I know your light's on. You cite Pioneer Investment Services. Your opponent cites the Pioneer Investment Services. But there's language in the case that I'd like you to confront, if you would. Sure. Most of your argument seems to be an appeal to, as you've just said, in essence, it's unfair for Ms. Baillon to bear the consequences of the attorney's inexcusable neglect, as you've put it. This is the language of the Supreme Court in Pioneer Investment. It says, in other contexts, we have held that the clients must be held accountable for the acts and omissions of their attorneys. It cites Link v. Wabash and says, we held the client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduling pretrial conference. And then it goes on and quotes that decision and says, the petitioner voluntarily chose his attorney as his representative in the action. He cannot now void the consequence of the acts and omissions of his freely selected agent, unquote. Why is that principle from Pioneer Investments not one that we should be paying attention to and following, coming as it does from the Supreme Court? Judge, the simple answer to that is your dissent in Ethan Michael. The more difficult answer to that is that in Link, the Supreme Court didn't, the appellant didn't avail itself to the escape hatch of 60B. So there was no reasoning of the Supreme Court in Link in order to make that decision. So yes, they said that the attorney, that the client is free to choose whatever attorney they want and you're going to be held responsible for whatever that attorney does. So you better make sure that attorney does what he's supposed to do or she's supposed to do. In Pioneer, they quote the Supreme Court in Links, but again, there wasn't the use of the escape hatch of 60B. I think that, you know, in this case, there was an application for 60B. The judge abuses discretion on more than one ground. This Pioneer discussion comes right after the court is talking about 60B. It's true it's not a 60B case, but the court goes through a lengthy discussion of 60B-1 and contrasts it with 60B-6. And this is in the very next section of the opinion where the court talks about this. So it's true it's not a 60B case, but I'm not sure that the court was making the distinction you're trying to make, which is, oh, yeah, don't pay attention to that in a 60B context. Well, I think the overarching theme here, Judge, is that we don't want litigants who are completely blameless to be responsible for their attorneys. When there's this – this is how – That is the theme, but there's this stuff called law that's between that theme that you keep spinning at us and what you want us to rule here. Chief Judge McKee, respectfully, this is very fact-specific to this particular case. And as Judge Jordan noted in his dissent, Ethan Michael, it's very rare for this case to be dismissed in its infancy in a procedural matter. One possible difference is that in Ethan Michael, the plaintiff took a proactive role in trying to figure out what was going on, and the attorney messed up despite the plaintiff's actions. Is there any evidence here as to what type of proactive, you know, proactive things were done by the plaintiff to check up on, if nothing else, the attorneys? Judge, in this particular case, the plaintiff – I respectfully think that she deserves special protection, that she was a single mom, she was undergoing treatment, she had surgery in April of 2012 from this accident, she was treating throughout – she wasn't in any state to be watching an attorney handling her personal injury matter, whereas Ethan Michael was a sophisticated corporation. Did she have a telephone? Yes, she had a telephone, she had a fax machine and email. Oh, a fax machine. I assume that your office had those things too. Certainly, Your Honor. I just checked the dates that we're talking about here. There was only one weekend – two weekends attempted in all your efforts to make service. This September 22 date when service was made of 2012, it is a Saturday, ironically. It's also Hobbit Day, which is somewhat appropriate. The other dates when service was made were all during the week. February 8, 9, and 10 of 2012, weekdays. April 17, 18, 2012, weekdays. February 21 and 22 are Saturday and Sunday, but the other days, 23, 24, 25, is Monday, Tuesday, Wednesday. So, again, if she was working, which may well be the case, you wouldn't have found her at home. And I come back to this allegation in the brief that she was attempting to evade service when there was really hardly any effort made to service her on a date that was not a work day. You're saying it's a scrivener's error. If Your Honor would allow me to supplement the brief, I can be sure to send that to Your Honor. Why don't you supplement the brief unless you can go back and tinker with the Gregorian calendar, which has already been tinkered with enough, it seems to me. It says, have you been sued? Is there a malpractice action pending against you? No. Boggles the mind. Okay, thank you. Thank you, Your Honor. Good afternoon, Your Honor. Good afternoon. Robert Kaplan, Margolis Edelstein, for the defendant, Amanda Baldwin. I did want to pick up on the last point that Your Honor raised regarding the evasion of service because the attachment or the proof of service contained in the brief does provide some additional explanation as to why service of process was not accomplished. The proof of service or the attempted proof of service dated February 2012 has the dates that service was attempted and also has written right under that Evans, E-V-A-N-S listed on box for apartment number 64, no listing for Amanda Baldwin. And I suspect that at that time that Amanda Baldwin was not residing at that address. In fact, I tried to put the pieces of this jigsaw puzzle back together again to find out what happened. I'm obviously representing this through an insurance carrier. And I can tell Your Honors that the claims notes that I have seen reflect that they obtained an updated address when they found out that the complaint had been filed. And they did not know about a complaint being filed until July of 2012. Mr. Kaplan, can I ask you to, well, I'd like you to respond to something in the district judge's order denying 60B relief. The court says on appendix pages 2 and 3, this case will not be reopened. To pursue these claims, plaintiffs must refile the complaint as a new case subject to the requirements of the relevant statute of limitations, unquote. Now, you'd concede, wouldn't you, that refiling was an impossibility. At that point, the court entered that order, right? It was. Had already run. Okay. So, unless one attributes to the district court judge, a very fine judge, kind of a cruel sense of humor, one would kind of be inclined to read that sentence and think, well, the judge was under a mistaken impression about the status of the statute of limitations. Is that right? Or, conversely, that the judge, Judge Hessler, was aware of the statute of limitations, did not want that order to be construed as allowing a complaint to be refiled without the statute of limitations coming as a bar to it. Why would he make it dismissal without prejudice if that's the case? Yeah, why wouldn't he just say, I'm sorry, but you're done? Why would he say, it's dismissed without prejudice, refile, if he knew you couldn't refile? Doesn't that language admit of no interpretation except that he thought it could be refiled? Your Honor, that is certainly one possible interpretation of the language as to why it was included. I'm trying to get you to help me find another one because I read in your brief the argument you've just made, and I'm really struggling to get there. When I read it, and my interpretation of it is that he did not want that order to be construed as having any impact on the statute of limitations. Then why wouldn't he just say, you're out of luck, dismissed, the statute of limitations is run? Your Honor, I do not know. There was no hearing on this, and so I don't know why Judge Hessler included that language, but I cannot. Well, here's the question, and it's an important one, Mr. Caplan. The pioneer factors that you rely on, pioneer investment factors, include among them the, quote, the potential impact on judicial proceedings, unquote, of a dismissal, right? Correct. Okay, so if the judge doesn't understand that the potential impact on the judicial proceedings, not the potential impact, but the certain impact, is the case will be dismissed, can it be said that the court has actually exercised its discretion? Your Honors, that is only one factor which I think the court takes into consideration when determining whether or not there was or there is excusable neglect. It's true that it's only one factor. There are other factors. Certainly, but the question I'm trying to get you to respond to is if a factor, one of five that's listed, so it's a pretty important one, is one on which the court apparently has a mistaken understanding, can it be said that the court is actually exercising discretion in weighing that factor? I think the difficulty that we have is we don't know why it was that Judge Hessler put that language into his order. That brings me to my question, then, what is the harm with remanding it to Judge Hessler, asking him to evaluate it in lieu of the fact that the statute of limitations had run at the time of the order? If he understood that to have been the case and factored that into the pioneer consideration, he'll simply reenter his order and say, well, thank you, Third Circuit, but I got that before, I did it again, case dismissed. But if he didn't understand that, that gives him a chance under Rule 60B to go back and then reconsider whether or not he wants to visit the sins of the firm on the clients. Your Honor, we certainly could obtain that explanation from Judge Hessler and find out if he knew or did not know the impact of his ruling was going to be, or his order was going to be a dismissal, essentially a dismissal with breaches, just because the statute of limitations had run. But I would urge the Court to also focus on all of the other factors under pioneer that need to be taken into consideration, not just the factor of the impact on the litigation in terms of the explanation for the delay, the prejudice. But why should Judge Hessler undertake that evaluation and factor into that evaluation the statute of limitations having run? Why should we do it now? Because what was before Judge Hessler was simply a motion, the Court's corresponding motion to dismiss for lack of prosecution because service of process had not been accomplished. There was no appearance before the judge. There was no explanation. There was then a motion to reinstate five and a half months or almost six months later where there was no explanation regarding why there was a delay. There was no proof of service. Now, was that motion unopposed? The motion to reinstate, was that unopposed? Yes, the motion to reinstate was unopposed. Well, then, again, if the motion to reinstate was unopposed, why not just send it back to Judge Hessler and have him take a look at this thing and look at the statute of limitations and… And apply the pioneer factors. Yeah, and your failure to oppose the motion in the first place. I'm not hearing any argument or prejudice that would suggest that that would be a problem. Your Honor, I don't think it would be a problem. I don't know that I can stand before this court and say it would be a problem to go back and ask Judge Hessler, essentially, did you know what the impact of your decision was going to be? And if you did not know that, would you have reached a different decision? Well, isn't that the very thing that is involved in the exercise of discretion is understanding the impact of a decision? I mean, that's why the Supreme Court called it out as a factor that needed to be considered, presumably, right? I mean, pride requires that you give an explanation when you rule on a 60B motion. Which wasn't given. Well, of course, at that point, all the judge was looking at was the factors regarding why hadn't service of process been accomplished. Sure, and I don't think anybody in the courtroom, even Mr. Haddad, is prepared to say those were good reasons. He himself has said, look, what happened there is, you know, to use his word, it was inexcusable. So, there's bad stuff there. But that doesn't really go to the point we're pressing on you right now, which is, is this something for the district judge to handle? In the first instance, having it made clear to him, wait a second, dismissal means there's no more case. There is no refiling. It's not without prejudice. It can't be. By definition, that's exactly right. It's good by definition. If, in fact, that's what occurs, then we're asking Judge Chesler to reconsider his prior decision. On the basis of a correct understanding of the facts, right? Aren't we well beyond that at this point, though? And if, in fact, we obtain the explanation from Judge Chesler that either he did not understand that the dismissal would then prevent a subsequent suit from being filed, aren't we back here before your honors in order to determine, now that we know that, was there an abuse of discretion? Maybe, but one question is, I don't know whether we'll be back here or not. I don't know whether they'll take another appeal. But at least we'll have the benefit of an order from the district court, which is founded on an express statement that takes account of these pioneer factors on a correct understanding of the facts, right? That's a different state of affairs than we're at right now. The difficulty I have with the argument is, or the position that you're asserting, is that it assumes that Judge Chesler was not aware of the facts. It assumes that he was not aware that the statute of limitations had run. And I don't know that that is a correct assumption. I think it reads an awful lot into one sentence in his order. Well, I'm not sure. When you say it reads a lot into it, it's difficult. And I've read your brief. I've heard your argument here. So maybe it's the best argument you've got, and that's fine, too. But it's hard to square the words without prejudice and refile within this applicable statute of limitations with any understanding except the understanding that there could be a refiling. Now, if you've got a basis for helping us understand that there's a different meaning to that, other than what we've discussed, I'd be pleased to hear it. I have no other explanation for that other than he did not want his order to be interpreted as allowing there to be a refiling of the complaint where somehow the statute of limitations was now waived or that there was going to be. You could look back in time and say because the original complaint had been filed within the statute of limitations, any refiled complaint would also be timely filed. Beyond that, I do not know. But I think it's difficult to believe that with the moving papers that were before Judge Shessler, he did not understand that this arose out of a motor vehicle accident, a two-year statute of limitations was applicable, that the accident was back in August of 2009. And certainly he may well, once this is clarified, assuming he didn't understand, because you're right, maybe this is kind of a circumlocution that he really understood it and this was his way of saying I understood it. I suppose that's conceivable. I'm having a hard time conceiving it, but assume it is. Then don't you end up just where Chief Judge McKee has indicated, you win. But you win on a clarified record. And if your honors think that it's necessary to send this back to Judge Shessler for that clarification, what I don't think, at that point, though, do we then ask Judge Shessler to, if in fact he was mistaken, to now reconsider his prior decision as to whether or not this should have been dismissed, if in fact he was under the mistaken belief that the case could have been refiled? Or does now that his explanation of the order have to be viewed by this court and taken into consideration with the other factors in Pioneer in order to determine whether or not the case should remain dismissed? It would be something that he has to work out or we have to work out in our order. But the other thing, it seems to me this is very different than Pioneer. Link, as was mentioned earlier, was a case that was mentioned in Bonner and Mr. Haddad mentioned it. There was not a petition for relief under 60B in Link. That may be an attenuated argument now because in Pioneer, as Judge Jordan said, the Pioneer discussion was all around 60B, even though it wasn't a 60B case. So I'm not sure how big a distinction that is about Link. But beside that, I don't know of any of our cases where we have a situation where there's one, the statute of limitations will have run, putting a party out of court if the 60B relief is not granted. In addition to that, the motion to grant relief is filed without opposition. Now, if there's a case out there where a district court judge has denied a 60B motion, dismissed the complaint, and while the statute of limitations had run and there was no opposition to granting relief at the time the 60B motion was filed, maybe you can point me to that case. Your Honor, the timing of this was that the motion had been filed. There was obviously no service on Amanda Baldwin at that point in time. There was, I don't believe, any opportunity to respond to the motion to reinstate and substitute a service, although we may have heard about it. When I went back, because I reviewed that myself, to say, well, what was the timing? This file went to the, well, came from an insurance carrier and was in our office on July 16th. By July 26th, the order or the motion to reinstate and substitute a service had already been denied. So you're saying you didn't have time to file an opposing motion? I don't believe that there was enough time that we could have responded to it, July 16th was the date that the file had been signed by an insurance carrier. I'm not sure how they got their information at that point. And July 26th, that motion was already, was denied. Why shouldn't the same rule be applied to you in terms of if there's a problem with the attorney or the attorney's process that builds in delay, well, the client is still stuck with the fact that the attorney, for whatever reason, did not file an opposing motion to the motion to 60B relief. You're saying, well, we didn't file the motion because of the way the work flowed from the attorney to the attorney to the client. Well, it wasn't to the client. It was to the insurance carrier. So it wasn't to the defendant. The real client is the insurance carrier, isn't it? Excuse me? The real client is the insurance carrier, isn't it? And there are all kinds of arguments about that, but you're here because of the insurance company. No. Well, Your Honor, I'm here because of Amanda Baldwin. You represent Ms. Baldwin. Okay. Now, her defense is being provided by an insurance carrier. That's absolutely true. I would have to go back to see if anybody even had that motion, the motion to reinstate, and the motion for substituted service at that point in time. I don't know that we even had that motion or that we simply found out about it when we opened up a file and we need to file an answer and we find out we can't file an answer because this complaint has been dismissed. On page 8 of the reply brief, the plaintiff asserts that there's no prejudice to your client if the case is reinstated. I presume you'd have a different take on that. Do you want to say what the prejudice would be, and would you be expressing that to Judge Chesler if you had the opportunity on a remand? Sure. First, when I was reading the cases, I was struck by the fact that it's not actual prejudice that has to be shown. It's the danger of prejudice, and that's what the court speaks about. And what is the danger of prejudice? Well, I can't tell you what actually may happen if this case is reinstated and then we go back and we try to get what we normally get when we defend bodily injury claims, but I know that this accident was in August of 2009. Are we going to be able to get the medical records that we normally get? Am I going to be able to get witness statements from the witnesses that I would normally contact? Those are the kinds of problems that automatically flow from any delay where the courts have said that kind of prejudice is not the kind of prejudice that we're looking for under this kind of analysis. It has to be specific. Witnesses died, something of that sort. I can't represent that. I can't represent that because my client didn't get the lawsuit, didn't know about it, that she destroyed documents and thought there was not going to be a lawsuit and now there's prejudice to her. I cannot make that kind of representation to the court. I do not know what the impact of this delay is going to have on the litigation. I will only know that if it's reinstated and that we're litigating it and I'd see what my difficulties are at that point. Then you can make that argument to Judge Chesler. It seems like a perfect resolution here. You'll have the chance to dig into all that. You go before Judge Chesler. If the records have been destroyed, there's an eyewitness there who talks about, well, yeah, there's a rear-end collision, but the brakes were slammed on, so maybe there's contributed to a negligence, something of that sort. That's the kind of thing you can argue to Judge Chesler. You can't have that witness available now because the witness is either dead or unavailable. You can't find that witness. Medical records have been lost. That's exactly the kind of thing that would be helpful to have freshed out in the hearing in the district court. And he may say, okay, well, I'm sorry about this, Ms. Bayan, but it's not fair to the other side now to reinstate this lawsuit, and it's the way the cookie crumbles. Or he may say, well, what I'm hearing about prejudice is not so great as to overcome the prejudice of knocking out what appears on its face to be at least a colorably meritorious claim, and therefore I'm going to grant the 60B motion, which I would have done initially had I known I was putting her out of court when I said without prejudice. It seems to me that's the fairest way all around. It doesn't deprive you or your client of any defense you may have or any evidence you might have. It doesn't deprive Ms. Bayan of her lawsuit based upon the, I won't call it, the absence of conduct of Mr. Ho and the law firm he's associated with, which is, as I said, it's the worst I've seen in 30 years on the bench. I've just never seen anything like it before. He wasn't, there was almost no client-attorney relationship because he did absolutely nothing, zero. It boggles the mind. But I know that's not, I shouldn't be lecturing to you, so I'm sorry. And your red light is on. Anything else you want to tell us, Mr. Talton? Your Honor, if I'm mindful of the fact that a long time ago I was told to say what I should say about my adversary's case and be very careful what I say about my adversary, I try to abide by that rule. And, of course, this argument steps right over that line on multiple occasions. But to my adversary's credit, he has fallen on the sword and explained to the court what happened here. It's because of the young associate in his office. And the question is, when we look at the other factors, is that enough to get over a 60, to say that 60B1 excusable neglect has been met? I do not think it is in this case. Your Honor has mentioned that there is another available remedy to the plaintiff in this case. She is not without recourse if she chooses to pursue that remedy. I think, unfortunately, that's where this case needs to go and not with a reinstatement of the complaint against Amanda Baldwin. Well, it wouldn't necessarily be a reinstatement of the complaint. If we remanded, it would be for the district judge to consider this, and you'd have the opportunity to make your 60B argument, and you might very well prevail, right? Correct. Right. Okay. Thank you. Thank you. Thank you, Your Honor. Do you still have time for another call? Three minutes, Your Honor. Okay. That much? You sure you want it? You're a glutton, Mr. Hannon. Yes. I think one of the explanations might be, look, this was a dismissal under Section 4M of the Federal Rules of Civil Procedure. And 4M reads that if a defendant is not served within 120 days after the complaint is filed, the court, on motion or on its own, after notice to the plaintiff, must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Probably what should have happened here was that the court should have said there needs to be service within X period of time, and maybe that's what the court needs to consider, but I can at least understand why he dismissed without prejudice. Judge, you're absolutely right, but there's also other things he could have did. He could have brought the attorney in and sanctioned him. He could have brought him in and yelled at him. He didn't have to dismiss the complaint. What I heard on Mr. … Well, I mean, under 4M, I mean, he didn't have to bring him in necessarily, but the point is, you're a district judge. You've got something that's been sitting around. Now there's a rule that specifically applies to it. He was perfectly within his rights to call the parties before him after 120 days. He certainly was, Judge, but if you read his July 26 order, he was angry. And rightfully so. You mean January 26, I'm sorry. January 26 or July 26. July 26 order. Denying the 60B motion. At Attorney Ho for ignoring his order. That doesn't betray anger. It's just a statement. I read it. It's just the judge saying, hey, you didn't serve. You got a notice to show cause. You didn't show up. You didn't show up. And in your motion to reinstate, you've given no reason for that, for the delay. So I'm not reinstating. I would have been angry, but that's not the order I would have written. That doesn't sound angry. It just sounds pretty matter of fact, reflecting the facts. And, you know, if the judge, if one can presume the judge did know, what would be the abuse of discretion if the judge had understood that this was going to end up as a dismissal with prejudice in concluding that under those facts, you're just, you know, that's tough. You live with the lawyer you pick. And if the lawyer blows the statute of limitations, that falls on you, not on the other side. Judge, there's three ways where I can pinpoint how Judge Chester abused his discretion. And I want to urge this court to look at the facts when it abused his discretion. Yes. All right. Go ahead. One is by failing to enunciate the factors in Pioneer and analyzing them in this case. Even though Attorney Ho didn't do it in his brief, I don't think respectfully it allows Judge Chester not to do it either. I think this court already said, specifically, you abuse your discretion when you don't do that. He abuses discretion when he made a clearly erroneous finding of facts six months, although not a big deal, six months before the final. Not at all. Not at all. And number three, if he had did the analysis under Pioneer, he may very well have found that, yes, okay, mea culpa. The attorney came in, gave me a very good explanation. I'm going to allow it to come forward because of the innocent plaintiff, and because counsel just got into the case, I'm going to allow it to continue, which he may do. I'm just urging this court not to send it back down to Judge Chester for your honors to take a look at it, look at the factors, look at the cases, and make a decision so that way we can. That's true to doubt. That is amazing. That's an amazing argument. Yeah, I thought you would be doing the happy dance out of this courtroom. Oh, my gosh. Because at the possibility of a remand. You want us to decide it on the law. I'll take whatever your honors give me, and I'll be happy. You may not be happy, but we've told you, I think, to our questions what the law is. You want us to decide on the basis of Link and Pioneer. If it's a remand, it's a remand, respectfully. Thank you. Mr. Kaplan, good luck if it's a remand. Thank you. All right.